IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

BOBBY D. WEST,                    *
                                  *
        Plaintiff,                *
                                  *
vs.                               *    CIVIL ACTION 09-00602-B
                                  *
MICHAEL J. ASTRUE,                *
Commissioner of                   *
Social Security,                  *
                                  *
        Defendant.                *

## ORDER

Plaintiff Bobby D. West ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for period of disability, disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and 1381 *et seq.* On February 11, 2010, the parties consented to have the undersigned conduct any and all proceedings in this case, and waived oral argument. (Docs. 17, 18). Upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner is **AFFIRMED.**

## I.  Procedural History

Plaintiff protectively filed applications for disability income benefits and supplemental security income benefits on December 22, 2005. Plaintiff alleges that he has been disabled since March 1, 2003, due to seizures, hepatitis C, and herpes. (Tr.

106-108, 117).  Plaintiff's applications were denied initially and on reconsideration, and he timely filed a Request for Hearing.  (Tr. 52-55, 69).  On October 16, 2009, Administrative Law Judge Linda Gail Roberts (hereinafter "ALJ") held an administrative hearing, which was attended by Plaintiff, his representative and a vocational expert ("VE").  (Tr. 19-51).  On January 21, 2009, the ALJ issued an unfavorable decision wherein she determined that Plaintiff is not disabled.  (Tr. 387-397).  Plaintiff's request for review was denied by the Appeals Council ("AC") on August 21, 2009, and his second request for review was denied on September 2, 2009.  (Tr. 1-9).  As a result, the ALJ's decision became the final decision of the Commissioner in accordance with 20 C.F.R. § 404.981.  Id.  The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.    Issues on Appeal

A.    Whether the ALJ erred in failing to apply Grid Rule 202.02 to determine that Plaintiff is disabled.

B.    Whether the ALJ erred in failing to develop the record with regard to Plaintiff's seizure disorder and mental impairment.

C.    Whether the ALJ erred in finding that Plaintiff retained the ability to perform medium work.

## III. Background

Plaintiff was born on July 3, 1954 and was 54 years old at the

time of the October 16, 2008 administrative hearing.  (Tr. 23, 106).

Plaintiff testified that he has a sixth grade education, and that

he can hardly read and write.  (Tr. 24).  Plaintiff has past relevant

work as a roofer and as a framing carpenter. (Tr. 25-26, 39).

Plaintiff testified that he has a seizure disorder, Hepatitis C and

herpes, and that he has not been able to work since March 1, 2003

due to his seizure disorder.  (Tr. 26-27, 30).  Plaintiff also

testified that he has takes Dilantin for his seizures, and that he

had not had a seizure in 2008.  According to Plaintiff, he cannot

recall how many seizures he had in 2007 due to memory loss which he

attributes to his seizure disorder. (Tr. 29-32).  Plaintiff also

testified that his seizures occur without warning and cause him to

lose control of his bodily functions.  (Tr. 34, 36, 37).

## IV.  **Analysis**

### A.  **Standard of Review**

In reviewing claims brought under the Act, this Court's role is

a limited one.  The Court's review is limited to determining 1)

whether the decision of the Secretary is supported by substantial

evidence and 2) whether the correct legal standards were applied.

Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[1]  A court

may not decide the facts anew, reweigh the evidence, or substitute

---

[1]This Court's review of the Commissioner's application of legal
principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir.
1987).

its judgment for that of the Commissioner.  <u>Sewell v. Bowen</u>, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  <u>Brown v. Sullivan</u>, 921 F.2d 1233, 1235 (11th Cir. 1991); <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]").  In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision.  <u>Chester v. Bowen</u>, 792 F. 2d 129, 131 (11th Cir. 1986); <u>Short v. Apfel</u>, 1999 U.S. DIST. LEXIS 10163 (S.D. Ala. June 14, 1999).

### B.  **Discussion**

An individual who applies for Social Security disability benefits must prove his disability.  20 C.F.R. §§ 404.1512, 416.912.  Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 404.1505(a), 416.905(a).  The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has

4

proven her disability.  20 C.F.R. §§ 404.1520, 416.920.[2]

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2008, and that he has not engaged in substantial gainful activity since his alleged onset date.  The ALJ concluded that while Plaintiff has the severe impairments of seizure disorder and hepatitis C, they do not meet or medically equal the criteria for any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulations No. 4.  (Tr. 392). The ALJ found that Plaintiff has the residual functional capacity

---

[2]The claimant must first prove that he or she has not engaged in substantial gainful activity.  The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience.  If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work.  Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history.  Id. at 1005.  Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history.  Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985).  If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled.  Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).  See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

(hereinafter "RFC") to perform a limited range of medium work, and that he should avoid exposure to hazardous machinery and unprotected heights due to his seizure disorder. (Tr. 392-393). The ALJ also found that Plaintiff is unable to perform his past relevant work as a roofer helper or framing carpenter. The ALJ further found that considering Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 395-396).

The relevant evidence[3] of record reflects that between February 4, 2004 and December 21, 2005, Plaintiff was treated for seizures at least 16 times in the Emergency Room at Baptist Hospital in Nashville, Tennessee. (Tr. 178-251). Plaintiff reported that he was taking Dilantin[4] every night for his seizures; however, drug monitoring tests repeatedly showed a low phenytoin[5] level. (Tr. 185-187, 189-195, 201, 302, 210, 213-216, 217-219, 221-228, 230-236,

---

[3]While other records related to Plaintiff's treatment have been reviewed, only those medical records that bear on the issues before the Court are addressed. For instance, the undersigned notes that Plaintiff submitted additional records the AC; however, because those records were not before the ALJ, and Plaintiff has not argued that the AC erred in denying review, those records are not before this Court.

[4]Dilantin is an anti-epileptic drug, also called an anticonvulsant, that is used to control seizures. See www.drugs.com. (Last visited February 8, 2011).

[5]Phenytoin is marketed as Dilantin. See www.drugs.com. (Last visited February 8, 2011).

240-245). The medical records reflect that on examination, Plaintiff was generally alert and oriented times three. During a December 12, 2004 visit, Dr. Davidson noted that Plaintiff had experienced a sudden episode of tonic-clonic activity consistent with a seizure that had lasted about five minutes, and that he had lost urinary continence during the seizure. Dr. Davidson also noted that Plaintiff was "clearly far subtherapeutic"[6] and that he was given 800 mg of Cerebyn. Plaintiff's physical exam was normal, and it was noted that his mental status had returned to normal. Dr. Davidson observed that Plaintiff had been seen on multiple occasions for seizures, and while Plaintiff reported taking Dilantin, he had not followed up since any of his previous evaluations. Dr. Davidson diagnosed Plaintiff with acute major motor seizure and known seizure with poor control, and referred him to a neurologist for evaluation[7]. (Tr. 226-228). Plaintiff continued to be treated at the Emergency Room for seizures throughout 2005. Plaintiff was generally alert and oriented times three, and drug monitoring test consistently showed low phenytoin. (Tr. 178-225).

Plaintiff was also treated at the Metropolitan Health

---

[6]Subtherapeutic is the dosage of a drug or vitamin that is less than the amount required for therapeutic effect. See www.dictionary.reference.com. (Last visited February 8, 2011).

[7]There is no evidence that Plaintiff followed-up with the neurologist.

Department (hereinafter "MHD") in Nashville, Tennessee from October 2005 to March 2006. (Tr. 262-285). On Plaintiff's October 13, 2005 visit, Plaintiff reported that he was positive for hepatitis C, that he had experienced a seizure and that he had been out of his medication for three days. (Tr. 272, 279-285). Drug monitoring again revealed low phenytoin. Testing also revealed that Plaintiff had the active hepatitis C antibody, with elevated AST and ALT[8]. (Id.) Plaintiff's last treatment at MHD was on March 14, 2006. Plaintiff again reported seizure activity, that he had been hospitalized for two days, and that he had no memory of the events. Plaintiff was prescribed Dilantin and counseled regarding compliance. (Tr. 262).

Michael N. Ryan, M.D., reviewed Plaintiff's medical records and completed a Physical Residual Functional Capacity Assessment at the request of the Agency on March 13, 2006. Dr. Ryan opined that Plaintiff is limited to lifting 50 pounds occasionally and 25 pounds frequently, and standing, walking and sitting for about six hours in an eight-hour workday. Dr. Ryan also opined that Plaintiff has no limitations on his ability to push and pull with hand or foot controls, and no postural, manipulative, visual, or communicative limitations. He further opined that Plaintiff has no environmental limitations except that he should avoid all exposure to hazards such

_____

[8] Elevated AST and ALT indicate liver damage or injury from disease. See www.medicinenet.com. (Last visited February 8, 2011).

as machinery or heights due to his seizure disorder.  (Tr. 252-259).

Nathaniel D. Robinson, M.D., reviewed Plaintiff's medical records and completed a Physical Residual Functional Capacity Assessment on behalf of the Agency on August 7, 2006.  He opined that Plaintiff is limited to lifting 50 pounds occasionally and 25 pounds frequently, and standing, walking and sitting for about six hours in an eight-hour workday.  Dr. Robinson opined that Plaintiff has no limitations on his ability to push and pull with hand or foot controls, and no postural, manipulative, visual, or communicative limitations.  He further opined that Plaintiff has no environmental limitations except that he should avoid all exposure to hazards such as machinery or heights due to his seizure disorder.  (Tr. 287-294).

## 1.  **Whether the ALJ erred in failing to apply Grid Rule 202.02 to determine that Plaintiff is disabled.**

Plaintiff argues that the ALJ erred in failing to award benefits to him based upon Medical-Vocational Rule 202.02 (hereinafter "Rule 202.02").  Specifically, Plaintiff contends that the ALJ should have treated him as a person of advanced age who has no transferable skills and is limited to light jobs based on the VE's testimony which only identified light jobs that Plaintiff is capable of performing. Plaintiff argues that utilizing Rule 202.02 for light work would have resulted in a finding that he is disabled.

Defendant counters that regardless of whether Plaintiff was

treated as age fifty-four or fifty-five, he would not have been found disabled under Rule 202.02 because the ALJ determined that he had the residual functional capacity for a limited range of medium work, as opposed to light work; thus, Rule 202.02 was not implicated. Defendant argues that Rule 203.11-12 instead directs a finding that a person limited to medium work, with limited or less education like Plaintiff, is not disabled, regardless of age.   20 C.F.R. pt 404, supt. P. App. 2 §§ 203.11-12, 18-19.

In determining that Plaintiff could perform other work, the ALJ made the following findings:

> Considering the claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform (20 DFR 404.1569, 404.15691, 416.969 and 416.969a).
>
> If the claimant had the residual functional capacity to perform the full range of medium work, a finding of "not disabled" would be directed by Medial-Vocational Rule 203.26 and Rule 203.19. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled medium occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience and residual functional capacity.   The vocational expert testified that given all of these factors the individual would be able to perform the

> requirements of representative occupations in
> the regional economy of Tennessee at the
> unskilled, light level of exertion such as hand
> packer, 5,711(300,000 nationally);
> maid/housekeeper,8,029(450,000 nationally);
> building cleaner, 4,251 (233,972 nationally).
> . . .

(Tr.396).

The undersigned finds that substantial record evidence supports the ALJ's findings. As noted supra, once the RFC is established, the ALJ proceeds to steps four and five of the sequential evaluation process to determine whether the claimant can perform his past relevant work, and if not, whether there are a significant number of jobs in the national economy that the claimant can perform. See, e.g., Phillips v. Barnhart, 357 F.3d 1232, 1239-1240 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). There are two avenues for making this determination, namely the Medical Vocational Guidelines, commonly known as the "grids"[9], and the testimony of "a vocational expert." Phillips, 357 F.3d at 1239. The Eleventh Circuit has repeatedly held that "exclusive reliance on the grids is not appropriate either": 1) "when the claimant is unable to perform a full range of work at a given residual functional level"; or 2) "when a claimant has non-exertional limitations [i.e., impairments not

---

[9] The grids are a series of matrices which correlate to a set of variables -- the claimant's age, RFC, education, background and previous work experience. On entry of these variables into their appropriate matrix, a determination of disabled or not disabled is rendered. Dixon v. Astrue, 312 Fed.Appx. 226, 229, n.4 (11th Cir. 2009) (unpublished).

related to strength] that significantly limits basic work skills."
Id. at 1242 (internal brackets omitted).

In Watson v. Astrue, 376 Fed. Appx 953 (11th Cir.
2010)(unpublished), the Eleventh Circuit addressed the issue of
whether the ALJ was required to consult the grids where the claimant's
exertional limitations fell between two exertional levels and the
claimant also had nonexertional limitations.  The Court held that
nothing in the statutes nor regulations required the ALJ to use the
grids as a framework in all instances.  Id. at 958.  According to
the Court, "[o]nce it is clear that the grids do not direct a finding
of disability one way or the other, the ALJ may make an individualized
assessment of whether the claimant can 'make an adjustment' to other
work based on that particular claimant's RFC, including any
exertional and nonexertional limitation, and the claimant's other
vocational factors such as age, education and past experience.
While reference to the grids may be helpful in some cases, the grids
are in fact a proxy for individualized evidence, and may not always
be helpful.  The VE, on the other hand, seems especially suited to
the sort of individualized assessment needed in complex cases." Id.
The court in Watson  concluded that where the plaintiff changed from
the younger individual category to the closely approaching advanced
age category during the administrative process, and had both
exertional and nonexertional limitations, the ALJ did not err in

choosing to rely only on the VE's testimony to make the step five determination.  Id. According to the court, the plaintiff's case is a good example of a situation in which the VE could provide a more individualized analysis as to what type of jobs the claimant could perform. Id.

In the case at hand, the ALJ determined Plaintiff's RFC[10] by considering all of the record evidence, including the functional assessments completed by Drs. Ryan and Robinson. The ALJ's finding, that Plaintiff can engage in less than a full range of medium work and is restricted from hazardous conditions, is consistent with the doctors' assessments and the other medical evidence of record. Based on Plaintiff's RFC, and other vocational factors such as age, education and skills, the ALJ properly concluded that Rule 203.19 directs a finding of not disabled.  Plaintiff does not dispute that Rule 203.19  directs a finding of not disabled. Instead, as noted supra, Plaintiff argues that the ALJ should have used Rule 202.02, the regulation involving light work, as opposed to regulation for medium work because the VE only identified work in the light classification that he could perform.  Contrary to Plaintiff's assertion, the VE's testimony did not relate to Plaintiff's RFC.

---

[10] The ALJ makes an RFC finding based on all the evidence in the record, including medical history, medical reports, the effects of treatment, daily activities, lay evidence, symptoms, and medical source statements. See 20 C.F.R. §§ 404.1545(a)(3), C.F.R. 416.945(a)(3).

Plaintiff's RFC was properly established at step three by consideration of the record evidence, including the medical records and assessments. Thus, contrary to Plaintiff's assertion, there was no basis for the ALJ to utilize Rule 202.02.

Furthermore, adhering to Eleventh Circuit precedent, the ALJ properly utilized the testimony of a VE to determine whether the occupational base had been eroded due to Plaintiff's nonexertional limitations. Utilizing his vocational expertise, the VE conducted an individualized assessment and identified three jobs in the light classification existing in significant numbers in the national economy that Plaintiff can perform based upon his RFC, age and education. Accordingly, the ALJ did not err in using the grids as a framework, and in relying on the VE's testimony to determine that Plaintiff is not disabled.

2. **Whether the ALJ erred in failing to develop the record with regard to Plaintiff's seizure disorder**.

Plaintiff argues that the ALJ erred in failing to develop a full and fair record with regard to Plaintiff's seizure disorder[11].

---

[11] While Plaintiff frames this issue in his brief as whether the ALJ erred in failing to develop the record with respect to Plaintiff's seizure disorder and mental impairment, Plaintiff has not alleged a mental impairment, has not pointed to any evidence of a mental impairment in his brief, and has made no argument related to developing the record as to a mental impairment; therefore, that issue is deemed abandoned.

According to Plaintiff, the ALJ acknowledged a lack of sufficient evidence from which to make an informed decision, and should have ordered a neurological consultative evaluation in order to properly assess his seizure disorder given the absence of a physical residual functional capacity assessment from a treating or examining source. (Doc. 14 at 7-11). Defendant counters that it is Plaintiff's burden to prove that he is disabled, and to introduce evidence to support his application. According to Defendant, the ALJ need develop the record only if the record shows evidentiary gaps that result in unfairness or clear prejudice, and no such gaps are reflected here. (Doc. 16 at 9-12).

A hearing before an ALJ is not an adversarial proceeding; thus, "the ALJ has a basic obligation to develop a full and fair record." Graham v. Apfel, 129 F.3d 1420, 1422-1423 (11th Cir. 1997)(citation omitted). In fulfilling the duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such is necessary to enable the ALJ to render a decision. Holladay v. Bowen, 848 F. 2d 1206, 1210 (11th Cir. 1988); see also Good v. Astrue, 240 Fed. Appx. 399, 404 (11th Cir. 2007)("As this court has explained, the ALJ need not order an additional consultative examination where the record was sufficient for a decision."). While the ALJ is responsible to make every reasonable effort to obtain from the claimant's treating

physician(s) all the medical evidence necessary to make a determination as to disability, it is the claimant's burden to prove he is disabled. See 20 C.F.R. § 416.912(a) and (c)[12]. See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). Further, the ALJ is not required to order a consultative evaluation if the record includes sufficient evidence to make an informed decision. Robinson v. Astrue, 365 Fed. Appx. 993, 999 (11th Cir. 2010) (quoting Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007)).

In this case, Plaintiff's contention that the ALJ acknowledged a lack of sufficient evidence upon which to make an informed decision is incorrect. In her decision, the ALJ found as follows:

> It is the responsibility of the claimant and his representative to prove disability and to provide medical evidence. However, the evidence is lacking in this case to document the type of seizures, frequency, duration and sequelae of seizures. During the time claimant received medical care at the hospital emergency room, anti-seizure medication was consistently sub-therapeutic and well below 10

---

[12] The regulations provide circumstances under which an ALJ will usually order a consultative evaluation: when additional evidence is needed and is not included in the medical record; when evidence from a treating source cannot be obtained; when there exist conflict, inconsistency, ambiguity or insufficiency in the evidence that cannot be resolved by recontacting a treating source; when there is an indication that Plaintiff's condition has changed in a way that will likely affect Plaintiff's ability to work, but such change is not reflected in the record, and when necessary to secure highly technical or specialized medical evidence that is not available from a treating source. 20 C.F.R. §§ 404.1519a(b), 416.919a(b).

levels at 1.4, 1.7,3.4, 4.1, and 6.4. It was noted
at    that time that claimant was often out of medication.
The evidence does not document the frequency or
severity of seizures for 2006 and 2007. However, the
claimant testified that he had not had any seizures
in 2008. The lack of seizure activity for the past
year is an indication that seizures are controlled
with medication.

(Tr. 395).

Contrary to Plaintiff's assertion, the ALJ clearly found that

Plaintiff failed to produce proper evidence to support his claims,

as opposed to there being a lack of sufficient evidence in which to

make an informed decision.  The ALJ found, based on the evidence

before her, that while Plaintiff has a seizure disorder, his seizures

appeared to be controlled with medication as the medical records

consistently reflected low levels of seizure medication and

Plaintiff repeatedly reported being out of his medication. Also,

Plaintiff reported that he had experienced no seizure activity in

2008.  As found by the ALJ, "[the] lack of seizure activity for the

past year is an indication that [his] seizures were controlled with

medication." (Tr. 395).

It is also noteworthy that contrary to Plaintiff's assertion,

the ALJ did not state nor suggest that she did not have sufficient

medical evidence to render an opinion.  Instead, at the

administrative hearing, the ALJ placed Plaintiff's representative

on notice that Agency medical consultants had opined that Plaintiff

could engage in medium work, and the ALJ indicated that Plaintiff

needed medical records and a medical source statement to refute those opinions. (Tr. 49-50). At the request of Plaintiff's representative, the ALJ agreed to hold the record open until November 30, 2008 to afford Plaintiff's representative an opportunity to present additional medical evidence. Additionally, the record is devoid of any evidence that Plaintiff's representative requested a consultative examination or voiced any concerns about obtaining a medical source statement as suggested by the ALJ[13]. Further, while Plaintiff's new representative presented additional medical records to the AC, Plaintiff did not present any medical source statements or other medical records to the ALJ, and has not argued that the AC erred in denying review based on the additional records. Thus, this Court's review is limited to the record that was before the ALJ. See Falge v. Apfel, 150 F. 3d 1320 (11th Cir. 1998); Ingram, 496 F.3d at 1267 ("we understand Fagle to hold that when a claimant challenges the administrative law judge's decision to deny benefits but not the decision of the Appeals Council to deny review of the administrative law judge, we need not consider evidence submitted to the appeals council."). Upon review, the undersigned finds that the evidence

---

[13] While the record reflects that in 2004, Dr. Davidson questioned whether Plaintiff had been taking his medication, and referred him to a neurologist for evaluation, there is no evidence that Plaintiff followed up and actually saw the neurologist. Moreover, neither Dr. Ryan nor Dr. Robinson indicated that a consultative examination was needed in order to complete the functional assessments.

before the ALJ, including the assessments by Drs. Ryan and Richardson, was sufficient to allow her to render an informed decision. Accordingly, Plaintiff's claim that the ALJ failed to develop the record must fail.

> **3. Whether the ALJ erred in finding that Plaintiff retained the ability to perform medium work, based on the opinions of non-examining State agency medical consultants.**

Plaintiff argues that the ALJ erred in basing her findings of Plaintiff's RFC on the opinions of non-examining State agency medical consultants. (Doc. 14 at 11-14). He argues that a finding of not disabled at step five must be supported by the RFC of a treating or examining physician[14]. Defendant responds that while the assessment of a physician who has not examined Plaintiff cannot be relied upon, when taken alone, where such opinion is consistent with the record as a whole, the ALJ may properly rely on it. (Doc. 16 at 12-14).

In determining Plaintiff's RFC, the ALJ relied in part on the opinions of two state agency non-examining physicians. In doing so,

---

[14] Plaintiff's reliance on Coleman v. Barnhart, 264 F. Supp. 2d 1007, 1010 (S.D. Ala. 2003) is misplaced. Unlike the instant case, Coleman involved a situation in which the Agency sent the claimant to a medical consultant for examination; however, the consultant did not complete the physical assessment because he determined that the claimant needed a stress test, and the ALJ instead relied upon the assessment of a nonexamining medical consultant. In this case, neither Drs. Ryan nor Dr. Rich or any other doctor indicated that a consultative examination was necessary before a functional assessment could be completed.

she stated as follows:

> Consideration has been given the opinions of the state
> agency consultants in accordance with Social Security
> Ruling 96-6p . . . . These assessments are consistent with
> the ability to perform a limited range of medium work
> activity and include seizure precautions. These
> assessments are given significant weight in that they are
> consistent with and supported by the evidence as a whole.
>
> ...
>
> In sum, the [RFC] . . . is supported by the objective
> medical findings, subjective allegations, medical
> opinions, and other relevant evidence.

(Tr. 395).

Social Security Ruling 96-6p[15] provides that "[f]indings of fact

made by State agency medical and psychological consultants and other

program physicians and psychologists regarding the nature and

severity of an individual's impairment(s) must be treated as expert

opinion evidence of non-examining sources at the administrative law

judge and Appeals Council levels of administrative review." The

Ruling indicates that the medical opinions of such consultants must

be considered, and states that "State agency medical and

psychological consultants are highly qualified physicians and

_____

[15]Titles II and XVI: Consideration of Administrative Findings
of Fact by State Agency Medical and Psychological Consultants and
Other Program Physicians and Psychologists at the Administrative Law
Judge and Appeals Council Levels of Administrative Review; Medical
Equivalence ("SSR 96-6p"). The Ruling indicates that the medical
opinions of such consultants must be considered, and states that
"State agency medical and psychological consultants are highly
qualified physicians and psychologists who are experts in the
evaluation of the medical issues in disability claims under the Act."

psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." The opinions of non-examining medical sources, "when contrary to those of examining [sources], are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence." Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987). However, the ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources. Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991); Kemp v. Astrue, 308 Fed. Appx. 423, 427 (11th Cir. 2009)(holding that the ALJ did not err in relying on the opinion of a non-examining physician because their opinions were consistent with the opinions of examining physicians as well as with the other medical evidence in the record).

As noted supra, Drs. Ryan and Robinson reviewed Plaintiff's medical records and completed Physical Residual Functional Capacity Assessments in March and August 2006, respectively. In their assessments, they opined that Plaintiff can engage in medium work, with no other limitations except that Plaintiff should avoid all exposure to hazards such as machinery or heights due to his seizure disorder. (Tr. 252-259, 287-294). As opinions of State agency medical consultants, these assessments are to be treated as expert opinion evidence of non-examining sources pursuant to SSR 96-6. Additionally, because there is nothing in the record from a treating

source that conflicts with the opinions of these medical consultants, and because these opinions are consistent with the record as a whole, the ALJ did not err in relying on this expert opinion evidence. See Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991). See also Kemp, 308 Fed. Appx. at 427.

## V.    Conclusion

For the reasons set forth, and upon careful consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits and supplemental security income, be **AFFIRMED.**

**DONE** this **8th** day of **February, 2011.**

                              **/s/ SONJA F. BIVINS**
                    **UNITED STATES MAGISTRATE JUDGE**